JUDGE DUVALL
delivered the otinion oe the codrt:
An execution in favor of Winterbower against Ditto and others, appears to have issued on the replevin bond which had been previously taken, the execution containing the usual indorsement, “no security of any kind to be taken.”
On the 18th June, 1852, this execution was levied upon a negro boy, the property of Ditto, named Perry. A bond was thereupon executed by Ditto, with Shean and Brooks as his *171 sureties, stipulating that the negro levied on should be forthcoming in Elizabethtown on the 12th day of July, 1852, by 12 o’clock in the day.
The negro was not delivered according to the terms of the bond, and on the 20th of the same month an execution issued “ on said forfeited delivery bond.” To satisfy this execution, Ditto gave up in writing a tract of land to be sold, containing 180 acres, and agreed that it might be sold without advertising. The 1 and having been appraised, as required by law, at fifteen hundred dollars, was subsequently sold by the sheriff to Geo-ghegan, he being the highest bidder, for the sum of $395 03, being the amount due upon the execution.
The land not having been redeemed within the year, the sheriff executed a deed to the purchaser, Geoghegan, who after-wards entered upon and took possession of the land so purchased by him.
This action was thereupon instituted by Ditto, in which he claims to be the owner, and entitled to the possession of the land in contest, and alleges that the entry and possession of Geoghegan and others were wrongful, and that he had sustained damages, in consequence of such wrongful entry, to the amount of $200.
Geoghegan answered, justifying his entry upon the ground that he was the legal owner of the land in contest, and setting out fully the judgment, the several executions, and the sheriff’s sale and conveyance, under which he claims title.
Upon the trial, the foregoing facts were proved, in substance, and a verdict and judgment were rendered for the defendants.
To reverse that judgment, the heirs of Ditto, he having died pending the suit, prosecute this appeal.
The only material question presented by the record is that which relates to the validity of the execution under which the land was sold.
The provisions of the Revised Statutes, (p. 320, sections 1 to 3, inclusive,) under which the owner of personal estate taken in execution is allowed to give the officer levying the same a bond, with surety, to have the property forthcoming at the time *172 and place of sale, are substantially the same as those contained in the 14th section of the act of 1828. (1 Stat. Law, 041.)
In the case of Richardson, &c.,vs. Bartley, &c., (2 B. Mon., 330,) it was decided that the 14th section of this statute was evidently intended to provide for the taking of forthcoming bonds on executions which might issue on original judgments only, and that it must be so construed to make it stand consistently with the subsequent section, which authorizes a replevin, and provides for an indorsement on the execution that no security of any kind is to be taken.
It was also expressly decided in the same case, that where an execution is indorsed that “ no security of any kind is to be taken,” the officer has no right to take a delivery bond, and if taken, it cannot be ma.de the basis of an execution.
The reasoning of the court in that case, and the principles settled, apply with conclusive effect to the facts of the case before us. As just intimated, the present and former statutes regulating the subject, are identically the same in substance, and there can be no valid reason for applying a different construction to the Revised Statutes, supra.
But it is contended that an act approved March 10, 1843, {Sess. Acts, 1842-3, p. 60,) and which was in force at the date of the bond in question, essentially modified the law as settled in the case of Richardson and Bartley, and provided for the giving of at least one forthcoming bond under an execution indorsed “ no security to be taken,” &c. A careful examination of that act, however, will show that its provisions apply exclusively to replevin or recognizance bonds executed by persons in custody, to the commonwealth. The first section provides that persons taken on a writ of capias pro fine, or who may be in custody under a judgment of conviction for a misdemeanor, shall not be entitled to the pi'ison bounds, but may execute a replevin bond with good security to the commonwealth, and shall be thereupon discharged from custody. “ On such bond, execution shall issue as on other replevin bonds, or the commonwealth may have a capias ad satisfaciendum indorsed that ‘no security of any kind shall be taken.’” The second section permits the person so in custody, to go before the clerk *173 of the court and execute a recognizance in the nature of a replevin bond, as is done in civil cases, on which bond execution shall issue as on a replevin bond. Then follows the proviso, in which, after excluding a certain class of cases from the operation of the act, it is declared that “ where the clerk has entered that no security of any kind is to he taken, it is not to exclude the defendant’s right to give a forthcoming bond for the delivery of property or other thing on the day of sale; but should a forthcoming bond be once forfeited, it shall exclude a further security for a delivery of property in payment of the same debt on any other day of sale.”
Now, according to all rules regulating the construction of statutes, the proviso must always be construed as relating to the subject-matter of the enacting clause or clauses. The only object and purpose of the act in question, as set forth in the two enacting clauses, was to provide a mode by which persons in custody under a capias pro fine, or under a conviction for misdemeanor, might be released from such custody; the mode provided was the execution of replevin or recognizance bonds, by such persons, to the commonwealth, on which bonds certain writs of execution were to be issued, to be indorsed that no security of any kind shall be taken. The act relates to no other subject, and to no other class or description of bonds or executions than such as are therein specially authorized. Must not the application of the words of the proviso be limited to the same class and description of bonds and writs ? Or, can it be supposed that the words, “ where the clerk has entered that no security of any kind is to be taken,” were intended by the. legislature to embrace all replevin and other bonds having the force of a judgment, and all executions upon which, by the general law, a similar indorsement was required to be made ? It occurs to us that if the legislature had intended to change, in this important particular, the 14th section of the act of 1828, that intention would have been expressed in some more explicit and effectual form, than by a mere clause in the proviso of an act relating to a special and totally different object.
We are satisfied that the words of the proviso above quoted *174 must be construed as referring exclusively to the executions to be issued on the replevin or recognizance bonds which the enacting clauses specially authorized, and to which all the provisions of the statute were manifestly and clearly intended to relate.
It results, therefore, that the forthcoming bond taken by the sheriff, on the execution which had issued on the replevin bond, and which contained an express prohibition against the taking of further security of any kind, was wholly unauthorized, was ineffectual for any purpose as a statutory obligation, and could not be returned as such, and made the basis of an execution.
Consequently, the sale under the latter execution, and all the subsequent proceedings in connection with it, must be regarded as inoperative and invalid, and as having passed no title to Geoghegan, the purchaser of the land in controversy. His entry upon and possession of the land, if against and without the consent of Ditto, were of course wrongful, and constituted a sufficient cause of action on the part of the appellants.
The judgment is therefore reversed, and the cause remanded for a new trial and further proceedings in conformity with the principles of this opinion.